IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Criminal No. 17-187 |
| | ) |
| PETER DiGIACOMO, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**OPINION**

I.  Introduction

Pending before the court is a pro se motion for compassionate release (ECF No. 231) filed by Peter DiGiacomo ("DiGiacomo"). Also pending is a motion by DiGiacomo's court-appointed counsel for release from filing a supporting document (ECF No. 237). The government filed a response in opposition to DiGiacomo's motion on both procedural and substantive grounds (ECF No. 241). The motions are ripe for disposition.

II.  Background

DiGiacomo recruited straw purchasers to buy 20 guns, and obtain another stolen gun, all of which were to be given to a drug dealer. (Presentence Investigation Report ("PIR"), ECF No. 171). DiGiacomo pleaded guilty to 3 counts of making false statements in connection with the acquisition of firearms and 1 count of possession of a firearm by a person convicted of a misdemeanor domestic violence offense. DiGiacomo is now serving concurrent 60-month terms of imprisonment imposed by this court in November 2018 at each of counts 1, 4, 6 and 8 at Criminal No. 17-187.

DiGiacomo has a lengthy criminal history and is in criminal history category VI. His advisory guideline range would have been 151-188 months, although it was capped by the

statutory maximum of 120 months.  The PIR reflected DiGiacomo's traumatic childhood and significant need for mental health and substance abuse treatment (ECF No. 171).  The court was also aware, at the time it imposed sentence, that the mother of DiGiacomo's young son had passed away, and DiGiacomo's father had full custody of the child.[1]  The court recommended to the Bureau of Prisons ("BOP") that DiGiacomo receive grief counseling.

DiGiacomo is currently located at USP Coleman II, a high security penitentiary in Sumterville, Florida.  The BOP website reflects that there are currently 3 confirmed active cases of COVID-19 among inmates and 20 among staff.  https://www.bop.gov/coronavirus/index.jsp (last visited Nov. 10, 2020). Visitation at the facility is indefinitely suspended.  *Id.*

In February 2020, DiGiacomo wrote a letter to chambers concerning credit for time he served in federal custody.  The court appointed counsel and conducted status conferences in April and August, 2020.  When DiGiacomo filed his pro se motion for compassionate release in July 2020, counsel was instructed to consider that filing, as well.  The court granted counsel's motion for an extension of time, due to the possibility that success in recalculating the credit for time served in federal custody would render the compassionate release motion moot (ECF No. 236).  On October 2, 2020, counsel reported that he had been successful in obtaining approximately 10 months of credit from the BOP.  (ECF No. 237).  DiGiacomo's projected release date is August 22, 2022.  (ECF No. 237-1).

There is no evidence that DiGiacomo sent a letter to the warden or otherwise sought compassionate release from the BOP based on COVID-19 or his family circumstances.  DiGiacomo's interactions with the BOP involved only the calculation of his sentence.  It appears that he sought compassionate release only from this court.

---

[1] In his motion, DiGiacomo reports that his son is still being raised by his father (the child's grandfather).

III.     Discussion

In his motion, DiGiacomo seeks compassionate release due to: (1) the COVID-19 pandemic (noting 66 cases at USP Coleman II at that time); and (2) the need to be with his son, who is being raised by DiGiacomo's father.  DiGiacomo did not identify any conditions that would make him uniquely susceptible to COVID-19 and did not submit medical records.  The court will not address DiGiacomo's substantive arguments at this time,[2] because his compassionate release motion must be denied for failure to exhaust his administrative remedies pursuant to the First Step Act and 18 U.S.C. § 3582(c)(1)(A)(i).

In *United States v. Raia,* 954 F.3d 594 (3d Cir. 2020), the inmate filed a compassionate release motion with the court before the BOP responded to his initial request to the warden, and before 30 days passed.  The court of appeals found that the inmate did not exhaust his administrative remedies.  The court explained that the BOP had not been given 30 days to consider the inmate's request and there was no adverse decision by the BOP for the inmate to administratively exhaust.  *Id.* at 597. The court noted the BOP's statutory role and its extensive and professional efforts to curtail the COVID-19 pandemic. The court emphasized the importance of complying with the BOP's administrative procedures:  "Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Id.*

The decision of the United States Court of Appeals for the Third Circuit in *United States v. Harris*, No. 20-1723, 973 F.3d 170 (3d Cir. July 20, 2020), is not to the contrary.  In *Harris*,

---

[2] After a preliminary review, DiGiacomo's reasons are not persuasive. The current status of the COVID-19 response at USP Coleman II appears to be relatively controlled, with only 3 active cases among inmates. In *United States v. Reeves*, No. 18-cr-313, 2020 WL 5094825 (N.D. Tex. Aug. 28, 2020), the court denied a similar motion for compassionate release based on the death of the inmate's spouse because the grandparents were available to raise the child.

3

there had been lengthy administrative consideration of the inmate's requests for release based on his medical condition and the issue was interpretation of the "30-day lapse" provision. The court concluded, without extensive analysis, that "the statute states that the defendant may file the [compassionate release] motion [in court] thirty days after the warden receives his request." *Id.* at 171. *Harris* cited *Raia* for the proposition that before filing a compassionate release motion with the court, a defendant must "at least" ask the BOP to file a compassionate release motion and give the BOP 30 days to respond. *Id.* (citing *Raia*, 954 F.3d at 595).

The mere passage of time since DiGiacomo filed his motion does not make it ripe. The court of appeals' decision in *Raia* was issued approximately 30 days after the defendant's initial request to the warden. 954 F.3d at 596. The court of appeals, nevertheless, rejected the defendant's request to remand his compassionate release motion to the district court and described the defendant's failure to exhaust administrative remedies as a "glaring roadblock" making remand to the district court futile. *Id.* at 597.

Based on the record before the court, DiGiacomo did not make any efforts to obtain administrative relief from the BOP. He did not initiate the BOP's process by "at least" asking the warden to grant compassionate release. The BOP was not given an opportunity to consider DiGiacomo's circumstances or to render a decision that DiGiacomo could appeal to this court after 30 days. In sum, he did not even begin to explore his BOP administrative remedies, much less exhaust them.

## IV.     Conclusion

In accordance with the foregoing discussion, DiGiacomo's pro se motion for compassionate release (ECF No. 231) will be DENIED. The denial is without prejudice to

DiGiacomo's ability to file a new motion after he properly exhausts his BOP administrative remedies.  The motion by DiGiacomo's court-appointed counsel for release from filing a supporting document (ECF No. 237) will be GRANTED and counsel's representation will be concluded.

An appropriate order will be entered.


Dated:	December 2, 2020.

BY THE COURT:


<u>s/ Joy Flowers Conti</u>
Joy Flowers Conti
Senior United States District Judge